UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RODNEY L. ROGERS,

       Plaintiff,

vs.                            Case No.  3:07-cv-499-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

       Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 16, 2001.  (Tr. 118-20, 323-25).  Plaintiff's applications were denied initially and upon reconsideration.  (Tr. 64-78, 323-332).  Plaintiff filed a timely written request for a hearing before an Administrative Law Judge ("ALJ"), which was granted, and Plaintiff appeared and testified at a hearing held on January 28, 2003 (Tr. 29-59).  On February 28, 2003, the ALJ issued a decision

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 16).

1

finding Plaintiff "not disabled." (Tr. 9-19). Plaintiff requested review of the hearing decision (Tr. 17) and subsequently filed second applications for DIB and SSI on March 25, 2003 (Tr. 426-28, 780-83). On June 17, 2003, the Appeals Council denied Plaintiff's request for review on his initial applications for DIB and SSI (Tr. 13-16), and Plaintiff appealed to the U.S. District Court. On appeal, the U.S. District Court remanded Plaintiff's case to the Commissioner for further administrative proceedings and on August 23, 2004, the Appeals Council subsequently vacated the Commissioner's previous decision, consolidated Plaintiff's applications for DIB and SSI, and remanded this matter back to the ALJ for further proceedings. (Tr. 395).

Plaintiff's claims were then denied initially and on reconsideration (Tr. 375-78) and Plaintiff timely requested a hearing (Tr. 386-87). Plaintiff appeared and testified before an ALJ in a second hearing on November 17, 2005, along with a medical expert, Bruce Witkind, M.D., and a Vocational Expert ("VE"), Paul Dolan. (Tr.795-851). On December 15, 2005, the ALJ issued a decision finding Plaintiff "not disabled." (Tr. 356-367). Plaintiff filed a request for review of this decision (Tr. 346-48), and on April 25, 2007, the Appeals Council denied his request (Tr. 346-48), thus making the ALJ's December 15, 2005 decision the final decision of the Commissioner. Plaintiff timely filed his Complaint in the U.S. District Court on June 6, 2007. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff alleges he became disabled in October of 2000 or March of 2003[2] (Tr.

---

[2] During the January 2003 hearing, Plaintiff testified he became disabled in October 2000 (Tr. 47, 121); however, when he filed his subsequent applications in March 2003, he

47, 121, 426) due to back and neck pain, leg weakness, and arm and hand numbness
(Tr. 144, 437).  Plaintiff was involved in two vehicular accidents in 1993 and 1995 (Tr.
98-117) and connects the majority of his pain, including his back and neck pain, to
these accidents.

### B.    Summary of the Evidence Before the ALJ

Plaintiff was 50 years old on the date the ALJ issued his decision (Tr. 118, 357)
with a General Equivalency Diploma.  (Tr. 150).   He has past work experience as a
municipal maintenance worker and highway maintenance supervisor.  (Tr. 79, 282-88).
Plaintiff's medical history is discussed at length in the ALJ's decision and will be
summarized herein, but will be limited to the issues on appeal.

### i.    Medical Evidence[3]

Plaintiff was diagnosed with cervical spine strain after his first vehicular accident
in August 1993.  (Tr. 184-86).  Plaintiff underwent a MRI on September 8, 1993, which
showed a "slight reversal of the usual cervical lordosis centered at C5-C6."  The reading
radiologist noted there appears to be some anterior herniation of disc contents at C6-C7
into the soft tissues along the anterior sage of the cervical spine, as well as a slight
posterior bulge.  (Tr. 178-79).  Although Plaintiff took some time off work after the 1993
accident, his physician, Mark C. Gillepsy, eventually instructed him to return to light duty
work and to attend physical therapy sessions.  (Tr. 169-79).  Then, on December 15,

---

alleged an onset date of March 2003 (Tr. 426).

[3] While the record contains medical records on Plaintiff's mental state, Plaintiff's mental
state is not at issue on this appeal and thus, the Court will not provide a summary of the findings
of Plaintiff's mental evaluations.  Suffice it to say, there is no evidence indicating Plaintiff suffers
from any severe mental limitations.

1993, Dr. Gillepsy, placed Plaintiff on maximum medical improvement ("MMI") status with a 9% permanent whole body impairment rating, and instructed Plaintiff to return to full duty work with no limitations.  (Tr. 168).

Plaintiff was involved in a second vehicular accident in 1995; however there are no records which evidence he sought treatment immediately following this accident.

On April 25, 2001, Plaintiff went to the VA Hospital (the "VA") complaining of neck and back pain from his previous motor vehicle accidents.  (Tr. 256).[4]  He reported he could not stand more than 10 minutes without pain.  (Tr. 256).  An X-Ray of Plaintiff's cervical spine from this visit showed degenerative disc disease at level C6-C7 and secondary spondylosis.  (Tr. 258).  It also showed what appeared to be some compromise of the intervertebral foramina on the left side and possibly on the right side.  (Tr. 258).  An X-Ray of Plaintiff's lumbosacral spine showed possible degenerative disc disease at levels L4-L5 and minimal spondylosis of the lumbar spine.  (Tr. 250).  An X-Ray of Plaintiff's thoracic spine was normal.  (Tr. 257). Plaintiff's VA physician noted Plaintiff may have possible early degenerative disc disease at L4-L5.  (Tr. 256).

Plaintiff returned to the VA on April 26, 2001, and on exam, one of the VA physicians noted that Plaintiff looked well, but smelled of alcohol.  (Tr. 252).  She consulted with Plaintiff and Plaintiff admitted to smoking 1 ½ packs of cigarettes a day and drinking approximately eight to ten beers a day.  (Tr. 252).  The physician informed Plaintiff that he needed to stop drinking alcohol and smoking tobacco.  (Tr. 254).  On May 10, 2001, Plaintiff reported drinking almost twelve drinks per day and seemed

---

[4]  The majority of Plaintiff's treatment was provided by the Veterans Administration.

ambivalent about stopping.  (Tr. 251).  On May 24, 2001, Plaintiff returned again to the

VA, complaining of neck pain and numbness in his right upper arm and hands

bilaterally.  (Tr. 249).  He reported he still drank alcohol and smoked tobacco.  (Tr. 249).

His physician renewed his prescriptions and prescribed Plaintiff 100 mg of Neurontin.

(Tr. 249).

On July 16, 2001, Plaintiff underwent a MRI of his neck and cervical spine, which

showed a small focal central disc protrusion at C3-4 and C5-6, as well as degenerative

disc disease at C6-7 and multilevel degenerative facet disease.  (Tr. 246).  On August

30, 2001, Plaintiff returned to the VA, complaining of cervical neck pain, pain in arms,

parasthesias in his hands, and some lower back pain.  (Tr. 243).  On examination, the

physician noted he had good bilateral grasp strength.  (Tr. 243).  She also prescribed

Tylenol #3 for his pain.  (Tr. 243).

On September 6, 2001, Plaintiff continued to complain of cervical pain, but

reported feeling better with his medication.  (Tr. 242).  He claimed physical therapy was

not hurting or helping.  (Tr. 242).  On September 18, 2001, Plaintiff returned to the VA,

complaining of neck and back pain, occasional upper arm numbness, and painful

deadness in his hands bilaterally which was alleviated by shaking them. (Tr. 238).  The

VA physician recommended an EMG/NCS test to rule out carpal tunnel syndrome and a

MRI to test Plaintiff for lumbar stenosis.  (Tr. 238).

On September 18, 2001, Plaintiff underwent an electrodiagnostic study which

revealed entrapment mononeuropathy of the left median nerve at the wrist – carpal

tunnel syndrome; slowness of the left ulnar nerve conduction velocity at the elbow

suggestive of mild ulnar neuropathy, and borderline carpal tunnel syndrome also on the

right.  (Tr. 307-08).

On December 17, 2001, Jack Pulwers, M.D. a primary care physician with Northeast Florida Primary Care, evaluated Plaintiff.  (Tr. 261).  He noted Plaintiff smelled of alcohol and tobacco and that Plaintiff admitted to smoking a pack and a half a day and to using alcohol.  (Tr. 261).  On examination, Dr. Pulwers noted Plaintiff's range of motion in his lower extremity was decreased and he had minimal cervical and moderate thoracolumbar paraspinal spasm and tenderness.  (Tr. 262).  His fine motor skills were normal and although there was a tremor in both hands, his grip strength was 5/5, as was his musculoskeletal bilateral strength in all areas.  (Tr. 262).  Dr Pulwers noted Plaintiff's gait and balance was normal, but later – in the same report – noted his gait was wide based, with forward stooping and shuffling.  (Tr. 262).  Dr. Pulwers diagnosed Plaintiff with cervical spondylosis with degenerative disc disease; lumbosacral spondylosis with left greater than right sciatica; cervical and lumbar spinal stenosis; and gait abnormality.  (Tr. 262).

On January 4, 2002, Dr. Pulwers added an addendum to his previous report dated December 17, 2001, stating "I believe that due to the claimant's spondylosis, focal leg weakness and abnormal gait, the patient would NOT be able to sit or stand for at least 2 hours in an eight hour work day."  (Tr. 263).  Notably, it is unclear what caused Dr. Pulwers to add this addendum; however, there are no medical records demonstrating that Dr. Pulwers examined Plaintiff again between his first consult and his addendum.

Plaintiff returned to the VA for a MRI of his Lumbar Spine on February 6, 2002, which showed a large annular bulge at L2-3 causing relative decrease in canal size

6

without canal stenosis.  (Tr. 322).  On March 13, 2002, Plaintiff again returned to the VA, complaining of pain, approximately at about a level 8 out of 10, in his lower back and buttocks.  (Tr. 315).  He stated that movement and medication helped the pain, but quick movements made it worse.  (Tr. 315).

On March 20, 2002, Plaintiff saw an occupational therapist ("OT") at the VA, who noted Plaintiff suffered from carpal tunnel syndrome (tingling in his left hand) and tennis elbow.  Plaintiff's elbow pain was about a level 5 out of 10 and Plaintiff reported no pain when he was at rest and wearing his splints.  (Tr. 313).  Plaintiff's grip strength was 125 pounds on the right and 103 pounds on the left.  (Tr. 313).  His lateral pinch strength was 23 pounds bilaterally.  (Tr. 313).  The OT noted he fitted Plaintiff with splints and opined that Plaintiff would regain maximal function of his left hand, but should wear the splints for six weeks.  (Tr. 313).

Plaintiff followed up with the VA on July 31, 2002, again complaining of neck and back pain.  (Tr. 297).  Despite efforts by Plaintiff's physicians to get him to cease smoking, Plaintiff stated he did not wish to quit smoking.  (Tr. 294).

On October 7, 2002, Plaintiff was again evaluated at the VA.  (Tr. 284-293).  He stated his pain had worsened over the last three months (approximately a level 7 out of 10) and he requested stronger medications.  (Tr. 284-85).  A note from his physician reported that Plaintiff stated he consulted with neurosurgery and they could not guarantee that surgery would help, so he did not wish to undergo surgery.  (Tr. 284). (Tr. 286).  Plaintiff still smoked but stated he had quit drinking alcohol three months prior.  (Tr. 289).  On exam, Plaintiff's physician noted he had exaggerated lumbar lordosis and his gait was non-antalgic.  (Tr. 289).  His lumbar range of movement was

7

normal except for extension of about 25 degrees.  (Tr. 290).  His motor strength in his arms and legs bilaterally were 5/5 and all of his tests were negative, but he continued to complain of pain in his neck which radiated into his left arm and thigh pain secondary to deconditioned muscles.  (Tr. 290).

From October 2002 through September 2003, Plaintiff made regular visits to the Pain Clinic at the VA to fill pain medications (Tylenol #3, Oxycodone, and eventually Percocet), and received flouro-guided injections to help alleviate pain in his neck.  (Tr. 274-80, 341-45, 623-43).

On May 27, 2003, the VA determined Plaintiff was entitled to a non-service-connected pension because Plaintiff was unable to secure and follow a substantially gainful occupation due to a disability.  (Tr. 339).  Specifically, the VA found Plaintiff was disabled due to lumbar and cervical spine degenerative disc disease with radiculopathy, carpal tunnel syndrome of both wrists, and chronic sinusitis.  (Tr. 340).

On June 6, 2003, Dr. Pulwers, the primary care physician who previously evaluated Plaintiff, evaluated Plaintiff for a second time.  (Tr. 592-94).  Dr. Pulwers noted Plaintiff complained of sharp neck and lumbar pain and numbness in both hands.  (Tr. 592).  He stated that Plaintiff reported ibuprofen helped alleviate his pain (Tr. 593), but that he believed he had left-sided carpal tunnel syndrome and ulnar neuropathy in his left hand, with pain radiating from his neck to his lateral arm.  (Tr. 593).  Dr. Pulwers noted Plaintiff continued to smoke a pack a day, and took Percocet, ibuprofen, Neurontin and a sleeping pill.  (Tr. 593).  On exam, Dr. Pulwers noted cervical, thoracic, and lumbar paraspinal tenderness without spasm.  (Tr. 593).  Plaintiff had a positive supine straight leg raise at 30 degrees on the left and 60 degrees on the right.  (Tr.

8

594).  He also had a positive left Phalen's test and a negative Tinel's test.[5]  (Tr. 594).

Dr. Pulwers also noted Plaintiff's grip strength was normal, and his strength in his upper

and lower extremities bilaterally was 5/5.  (Tr. 594).  His sensation and fine motor skills

were intact, as was his tandem, heel and toe walking.  (Tr. 594).  Dr. Pulwers diagnosed

Plaintiff with degenerative disc disease and degenerative joint disease, cervical spine;

lumbar spondylosis; carpal tunnel syndrome, left hand; left greater than right sciatica;

hypertension; and a history of depression and insomnia.  (Tr. 594).

Dr. Pulwers evaluated Plaintiff again on November 10, 2003, still noting Plaintiff

complained of chronic pain.  (Tr. 658).  On examination, Dr. Pulwers noted Plaintiff's

back was tender at the cervical region and the right trapezius region; although, Plaintiff

had no scoliosis and no thoracolumbar tenderness or spasm.  (Tr. 660).  Plaintiff had

positive bilateral Phalen's sign and negative bilateral Tinel's sign, and a positive straight

raise leg sign.  (Tr. 660).  Dr. Pulwers noted Plaintiff was able to walk 30 yards without

assistance or a mechanical device, his fine motor skills were normal, his grip strength

was 5/5, as was his musculoskeletal strength, and his gait and balance were normal.

(Tr. 660).  Plaintiff had pain with range of motion testing on the left elbow.  (Tr. 661).  Dr.

Pulwers diagnosed Plaintiff with herniated nucleus pulposus cervical spine at C3-4, C5-

6, and C6-7; cervical spinal stenosis; degenerative disc disease cervical spine; lumbar

bulging disc L2-3 with left sided straight leg raise sign; chronic asthmatic bronchitis;

history of headaches (described as migraine); bilateral carpal tunnel syndrome; and

---

[5]   Phalen's and Tinel tests are commonly used to diagnose carpal tunnel syndrome.
See MedicineNet.com, www.medicinenet.com/carpal_tunnel_syndrome/page2.htm (Last visited
August 6, 2008).

tendinitis of the left elbow.  (Tr. 661).

On December 9, 2004, Plaintiff underwent an endoscopic carpal tunnel release to his left hand.  (Tr. 701-702).  On January 7, 2005, he was doing well and denied pain or numbness in his median distribution.  (Tr. 700).

Plaintiff returned to the VA from February 2005 through April 2005, complaining of pain and requesting refills on his pain medications.  (Tr. 673-85).  Notably, on April 28, 2005, Plaintiff's physician noted that Plaintiff's pain was manageable with Percocet and Plaintiff had recovered from the carpal tunnel syndrome since his surgery.  (Tr. 684).  The record also shows Plaintiff visited the VA from June 2005 through November 2005, still complaining of neck and back pain and requesting refills on his pain medication.  (Tr. 764-778).  The VA approved Plaintiff's request to change his pain medication from Percocet to Morphine.  (Tr. 764-776).

The record contains four physical residual functional capacity ("RFC") assessments of Plaintiff completed by State agency physicians.  The first was completed on June 14, 2001. The State agency consultant determined Plaintiff suffered from cervical and lumbar spondylosis, as well as alcohol and tobacco abuse.  (Tr. 210). He opined Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour work day, sit about 6 hours in an 8-hour work day, and push and/or pull unlimitedly.  (Tr. 244).  He further opined Plaintiff should frequently limit the amount of climbing and balancing he does, and only occasionally stoop, kneel, crouch, and crawl.  (Tr. 212).  The consultant found Plaintiff had no manipulative limitations.  (Tr. 213).  Finally, he found the alleged effects of Plaintiff's symptoms on his function was not consistent with the total evidence.  (Tr. 215).

10

The second State agency consultant completed a physical RFC assessment on January 8, 2002 (Tr. 266-273), and determined Plaintiff suffered from neck and back pain (Tr. 266).  He opined Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand or walk at least 2 hours in an 8-hour work day, sit about 6 hours in an 8-hour work day, and push and/or pull unlimitedly.  (Tr. 244).  The State consultant determined Plaintiff was occasionally limited in climbing, balancing, stooping, kneeling, crouching, crawling, and overhead reaching.  (Tr. 268-69).  He further opined Plaintiff should avoid moderate exposure to hazards.  (Tr. 270).  Finally, he acknowledged Dr. Pulwers opinion that Plaintiff could not sit or stand for at least 2 hours in an 8 hour work day, but conjectured Plaintiff's gait abnormality may be related to Plaintiff's alcohol use. (Tr. 272).

On June 30, 2003, a third State agency consultant completed a physical RFC assessment on Plaintiff, finding Plaintiff suffered from degenerative disc disease of the neck and back.  (Tr. 596-603).  The State consultant opined Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour work day, sit about 6 hours in an 8-hour work day, and was limited in using his upper left extremity in pushing and/or pulling in repetitive motions.  (Tr. 597).   He then determined Plaintiff was frequently limited in balancing and kneeling and occasionally limited in climbing, stooping, crouching, and crawling.  (Tr. 599).  The State consultant also opined Plaintiff should limit his overhead reaching.  (Tr. 599).  Finally, the State consultant opined Plaintiff's symptoms were attributable to a medically determinable impairment and their severity were consistent with the total medical and nonmedical evidence.  (Tr. 601).

11

On December 5, 2003, a State agency consultant completed the final physical RFC assessment on Plaintiff.  (Tr. 664-671).  He diagnosed Plaintiff with neck and back pain and opined Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour work day, sit about 6 hours in an 8-hour work day, and was capable of unlimited pushing and/or pulling.   He opined Plaintiff was occasionally limited in climbing, balancing, stooping, kneeling, crouching, crawling, and in reaching overhead.  (Tr. 666-67).  He noted Plaintiff should avoid concentrated exposure to hazards and finally noted that he believed Plaintiff's symptoms were consistent with the evidence of record and Plaintiff's RFC.  (Tr. 669).

### ii.   Plaintiff's Testimony

At the hearing on November 17, 2005, Plaintiff testified extensively about his prior jobs.  (Tr. 809-822).  With regard to his most recent position, i.e., supervisor of highway maintenance for Flagler County, Plaintiff noted that this job required mostly mental and visual attention and required him to pass on information about which he was knowledgeable to other people.  (Tr. 816).  Plaintiff testified that he continues to be treated at the VA and that he can no longer work because of his lower back and leg pain which prevents him from walking more than 50 feet, sitting longer than 25 minutes, and standing in one place more than 15 minutes.  (822-24, 830).  He testified his back pain was pulsating and occurs on a daily basis at approximately a level 7 out of 10.  (Tr. 825-26).  He further testified the pain increases when he walks and although he takes Morphine and Percocet to help ease the pain, they do not provide him full relief.  (Tr. 825-26, 829).   Plaintiff stated he also feels pain in the middle of his back and continues to experience carpal tunnel syndrome in both hands (greater on the left), despite having

had carpal tunnel surgery on his left hand.  (Tr. 827).  Plaintiff admitted to previously

abusing alcohol, but stated he has not consumed any in over a year.  (Tr. 831).

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20

C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful

activity, he is not disabled.  29 C.F.R. § 404.1520(b), 416.920(a)(2)(I).  Second, if a

claimant does not have any impairment or combination of impairments which

significantly limit his physical or mental ability to do basic work activities, then he does

not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c),

416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d),

416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent him from doing

past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e), 416.920(a)(2)(iv).

Fifth, if a claimant's impairments (considering his residual functional capacity, age,

education, and past work) prevent him from doing other work that exists in the national

economy, then he is disabled.  20 C.F.R. § 404.1520(f), 416.920(a)(2)(v).  Plaintiff bears

the burden of persuasion through step four, while at step five, the burden shifts to the

Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ found Plaintiff met the insured status requirements

of the Social Security Act through June 30, 2005, and Plaintiff had not engaged in any

substantial gainful activity at any point relevant to the decision.  (Tr. 357, 366).  Next,

the ALJ found Plaintiff had a history of degenerative joint disease of the lumbosacral

spine, alcoholism (in remission), sinusitis, degenerative joint disease at C-3/C-7 (age

related), and status-post carpal tunnel release – all impairments which he designated

severe, but which did not singularly or in combination meet or medically equal one of

the listed impairments in 20 C.F.R. Part 404, Subpart P., Appendix 1 (20 C.F.R.

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. 366).

    In considering Plaintiff's residual functional capacity ("RFC"), the ALJ found

Plaintiff retains the ability to perform a full range of medium work. (Tr. 363).   "Medium

work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of

objects weighing up to 25 pounds." (Tr. 363).  In determining Plaintiff's RFC, the ALJ

concluded Plaintiff's "subjective complaints were beyond what would reasonably be

expected in terms of intensity, duration, and frequency." (Tr. 363).

     During the hearing, the ALJ utilized both a neurosurgeon Medical Expert and a

V.E.  The Medical Expert, Dr. Witkind opined that Plaintiff's complaints were subjective,

with no neurological or neurosurgical problem, and that Plaintiff did not have any

functional limitations of significance, other than what would be compatible with a 50 year

old who had mild arthritis in the neck and some mild bulging in his low back.  (Tr. 806).

Dr. Witkind further opined Plaintiff could do a full range of medium work.  (Tr. 806, 808).

After seeking the medical opinion of Dr. Witkind and listening to Plaintiff's testimony, the

ALJ posed several hypothetical questions to the VE.  The VE noted one of Plaintiff's

previous maintenance jobs was performed at the light level and Plaintiff's supervisor

14

jobs were performed at the light to medium level.  (Tr. 846-47).  The VE then

determined that if Plaintiff was capable of medium work, he could perform these

previous jobs.  (Tr. 848).  He also identified various light jobs Plaintiff was capable of

performing.  (Tr. 848-49).  After considering the evidence, the ALJ determined Plaintiff

was capable of a full range of medium work and could return to his past work as a

maintenance worker or highway maintenance supervisor, as he previously performed

these jobs.  (Tr. 366).  Accordingly, the ALJ found Plaintiff "not disabled" as defined by

the Social Security Act.  (Tr. 366).

## III.   ANALYSIS

### A.   <u>The Standard of Review</u>

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence.  <u>Richardson v.

Perales</u>, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact

are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla – i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  <u>Foote v.

Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835,

838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.     Argument**

Plaintiff asserts three arguments on appeal.  First, he argues that the Commissioner erred in failing to find that Plaintiff suffered from any manipulative limitations from 2001 through his carpal tunnel release in 2005.  (Tr. 19, p. 1).  Second, Plaintiff argues the Commissioner erred in placing great weight on Dr. Witkind's medical opinion of Plaintiff's impairments because it conflicted with other non-examining and examining physicians' opinions.  (Tr. 19, p. 1).  Third, Plaintiff argues the Commissioner erred by not developing the record further when he failed to order a consultative neurological examination.  (Tr. 19, p. 1).  The undersigned will address each of these issues below.

**i.     Whether the ALJ Erred by not Finding Plaintiff Suffered from any Manipulative Limitations from 2001 Through the Date of his Carpal Tunnel Surgery in 2005**

Plaintiff argues the ALJ erred in concluding that Plaintiff did not suffer from any manipulative limitations from his carpal tunnel syndrome between 2001 and at least early 2005.  (Doc. 19, p. 8).  Plaintiff asserts he had an extensive history of upper

extremity symptoms which eventually led to nerve conduction studies that confirmed his carpal tunnel syndrome in 2001.  Id. at 9.  He states he underwent a left carpal tunnel release in late 2004, but continues to suffer from ongoing symptoms.  Id.  He argues the ALJ erred in finding that his condition improved after his surgery, but that he also neglected to make well-reasoned findings as to the extent of his limitations for the period from mid-2001 through November 2004.  Id.  Plaintiff notes that his Phalen tests were positive and Plaintiff repeatedly indicated he was in pain and having numbness in his upper extremities.  Id.

The Commissioner admits that it is true Plaintiff complained of numbness and was diagnosed with carpal tunnel syndrome; however, he argues the proper inquiry is whether Plaintiff had functional or work related limitations from this condition.  (Doc. 20, p. 7).  Plaintiff asserts the evidence does not reveal significant work-related limitations in manipulation.  Id.  The Commissioner further asserts that on examination, Dr. Pulwers reported Plaintiff had normal fine motor skills, normal grip strength, normal wrist strength bilaterally, and normal arm strength with intact sensation.  Id. at 8. The Commissioner also argues that the ALJ did not err in giving more weight to Dr. Witkind's opinion than the non-examining state agency physicians' opinion and that the VA decision finding Plaintiff disabled was only in part due to carpal tunnel syndrome and was properly rejected by the ALJ.  Id.  at 9.

As noted above, the District Court remanded the earlier decision of the ALJ and instructed the Commissioner to reconsider Plaintiff's subjective complaints, consider all of the relevant evidence of record, including the VA Rating Decision, and to conduct any other proceedings deemed appropriate.  (Tr. 356).  The ALJ did just that.  He accurately

set forth Plaintiff's objective findings, as well as his subjective complaints and

considered all of the relevant evidence of record, including Plaintiff's complaints of hand

numbness and carpal tunnel syndrome.   For instance, the ALJ noted Plaintiff was

diagnosed with carpel tunnel syndrome and had symptoms of left elbow pain and

tingling and left hand numbness.  (Tr. 359-60).  He further noted that in 2003, Dr.

Pulwers – an examining physician –  determined Plaintiff's strength was 5/5 in his upper

extremities, bilaterally.  (Tr. 360).  Also, by adopting the previous medical summary set

forth in the ALJ's February 28, 2003 decision, the ALJ acknowledged that in 2001 Dr.

Pulwers found Plaintiff's fine motor skills were normal and that records from the VA

reflected that Plaintiff's grip strength was 125 pounds on the right and 103 pounds on

the left and his lateral pinch strength was 23 pounds on both hands.  (Tr. 23).  The ALJ

also adopted the part of the earlier ALJ decision which noted that Plaintiff's carpal

tunnel syndrome was borderline on the right and that he had mild left ulnar neuropathy.

(Tr. 23).  The ALJ referenced Dr. Witkind's opinion that Plaintiff's recent carpal tunnel

release appeared to be successful and that Plaintiff's records failed to show any

significant neurological difficulties or abnormalities.  (Tr. 360).  Finally, the ALJ noted

that Plaintiff testified he is right-hand dominant, has reported to treating sources that he

recovered from his carpal tunnel surgery and no longer has pain or numbness in his

hand.  (Tr. 363).

In determining Plaintiff's RFC, the ALJ placed great weight on the opinion of Dr.

Witkind, a board certified neurosurgeon, who also reviewed all of Plaintiff's medical

evidence and offered an extensive assessment of Plaintiff's limitations.  Notably, both

Dr. Witkind and the ALJ referenced Plaintiff's prior complaints of elbow pain, bilateral

18

hand numbness, and diagnosis of carpel tunnel syndrome; however, the Commissioner is correct that a mere diagnosis of an impairment does not equate to a limitation which affects a claimant's ability to work.  See Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987) (noting that a diagnosis of condition says nothing about why a claimant cannot remain gainfully employed); see also Milanes v. Astrue, No. 3:07cv425-J-HTS, 2008 WL 1766927 *2 (M.D. Fla. April 15, 2008) ("A 'mere diagnosis . . . says nothing about the severity of the condition.'" ) (citing Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam)).

        The ALJ referenced Plaintiff's previous complaints, considered the evidence and the opinions of the medical doctors, noted Plaintiff was right hand dominant, and adequately and explicitly set forth his reasoning why Plaintiff's subjective complaints were not quite credible.  The ALJ also set forth the opinions of state agency consultants, some of which found Plaintiff limited in pushing or pulling with his left upper extremities and/or limited in reaching overhead, and properly rejected them by noting Plaintiff's grip strength and musculoskeletal strength were 5/5, even before his carpal tunnel surgery. (Tr. 363).  Additionally, although the V.A. Hospital found Plaintiff disabled in part due to carpal tunnel syndrome, the ALJ also adequately rejected this finding because the decision fails to contain a sufficient rationale for finding Plaintiff disabled, in that it does not include all of the factors which are germane to a disability decision under the Social Security Act,  and the ALJ is not bound by such decision.  (Tr. 365).

        In sum, the ALJ adequately explained his reasoning for finding that Plaintiff did not suffer from any manipulative limitations, including carpal tunnel syndrome, which affected his ability to work, and his opinion is supported by substantial evidence.

19

Notably, Plaintiff fails to offer any significant evidence which demonstrates he was not capable of working at his prior jobs as a result of his carpal tunnel syndrome.  As mentioned above, Plaintiff bears the burden of proving an inability to engage in substantial gainful activity in order to receive disability benefits.  See 20 C.F.R. §§ 404.1512, 416.912; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

> **ii.**   **Whether the ALJ Erred in Adopting  Dr. Witkind's Findings Despite the Findings of Other Physicians and the Lack of a Neurological Consultation**

Plaintiff states that the record contains multiple assessments from state agency non-examining and examining physicians which opined Plaintiff was limited to light work or less.  (Doc. 19, p. 15).  Moreover, he points out that even the first ALJ found Plaintiff was limited to sedentary work from October 2001 through February 2003.  (Doc. 19, p. 15).  Thus, Plaintiff argues the ALJ erred by adopting the "renegade" opinion of Dr. Witkind, which found Plaintiff capable of medium work.  Id. at 16.  Plaintiff also argues that the ALJ erred in adopting the opinion of Dr. Witkind because Dr. Witkind admitted, repeatedly, in his testimony, that he wished the record contained a neurological examination.  Id.   Plaintiff contends Dr. Witkind's opinion is not supported by the evidence based on MRIs, nerve conduction studies, and EMG studies.  Id. at 17-18.

The Commissioner responds Plaintiff's argument is meritless because Dr. Witkind reviewed all of the medical evidence, which none of the state agency physicians were able to do, and he was particularly qualified to provide an opinion due to the fact he has many years experience as a neurosurgeon.  (Doc. 20, p. 9).  Further, the Commissioner responds that Dr. Witkind gave detailed testimony concerning the medical evidence, including the significance of Plaintiff's MRI results and the lack of any

neurological abnormalities.  Id. at 9-10.  The Commissioner acknowledged that Dr.

Witkind did note the lack of any neurological testing, but argues that Dr. Witkind never

hesitated in opining that Plaintiff was capable of working.  Id. at 10.

Dr. Witkind did not treat or examine Plaintiff, however, he is a board certified

neurosurgeon who had an opportunity to analyze all of the medical evidence of record

in this case.  When an ALJ rejects the opinion of any physician – even a non-examining

physician –  because the evidence supports a contrary conclusion, the ALJ is "required

to state with particularity the weight he gives to different medical reasons and why."

McCloud v. Barnhart, 166 Fed. Appx. 410, 419 (11th Cir. 2006).   Here, the record

contains an opinion by Dr. Pulwers – an examining physician – stating Plaintiff could not

sit or stand for at least two hours and several opinions by a state agency physicians

over the years finding Plaintiff capable of working at a lower level than medium level

work.  The ALJ, however, rejected these opinions and instead credited Dr. Witkind's

findings in light of the fact that Dr. Witkind gave specific and detailed testimony finding

Plaintiff capable of a full range of medium work and noting that Plaintiff had no

significant neurological abnormalities.  (Tr. 362).

The ALJ explained he did not attach any weight to the State agency medical

consultant's RFC assessments because they failed to identify any medically

determinable condition that could reasonably be expected to result in such limitations.

(Tr. 363).  Further, he rejected Dr. Pulwers's finding that Plaintiff would not be able to sit

or stand for at least two hours in an eight-hour day because Dr. Pulwers later assessed

Plaintiff on two occasions in 2003, yet he did not assess similar limitations.  (Tr. 362).

Indeed, as the ALJ pointed out, Dr. Pulwers noted Plaintiff's gait was normal and his

strength was  5/5 in his upper and lower extremities, bilaterally.  (Tr. 362).

It is true that the ALJ placed great weight on Dr. Witkind's opinion; however, this was not error, as Dr. Witkind explained his reasoning for his findings in great detail during the November 17, 2005 hearing.  Specifically, Dr. Witkind noted that Plaintiff had a long history of neck and back complaints, but that a 1993 MRI showed mild abnormalities at the C6,7 disc and no neurological compression  (Tr. 802-03).  Further, Dr. Witkind determined a 2001 MRI showed no evidence of any neural compression or spinal compression.  (Tr. 803).  Dr. Witkind opined that the studies showed degenerative disc disease, which is compatible with his age and that Plaintiff is rather fortunate that he has not had significant worsening.  (Tr. 804).  Dr. Witkind noted that an evaluation from the VA Hospital demonstrated a normal neurological exam.  (Tr. 804).

Dr. Witkind also reviewed Dr. Pulwers's findings and acknowledged that Dr. Pulwers found Plaintiff was not capable of sitting for more than two hours; however, Dr. Witkind opined that he did not believe Dr. Pulwers was capable of making this finding because Dr. Pulwers made no objective findings and because he is not a neurologist. (Tr. 804).  Dr. Witkind also determined that the records did not support a finding of any neurological abnormality and in fact, Dr. Pulwers documented a normal neurological examination.  (Tr. 804).

After considering an MRI which showed cervical stenosis at C4-C6, Dr. Witkind opined that this is a "mild condition" and if Plaintiff elects to have surgery, it is not an extensive procedure.  (Tr. 805).  Dr. Witkind also reviewed an MRI of Plaintiff's lumbar spine which showed a bulge at L2,3, but noted this was compatible with age and determined Plaintiff has no symptoms compatible with either cervical or lumbar

22

stenosis.  (Tr. 805).  In sum, Dr. Witkind found Plaintiff could not meet a disability listing,

had no neurosurgical or neurological complaints, but rather, only subjective complaints,

and aside from some mild arthritis in his neck and mild bulging in his back related to

age, Plaintiff was capable of performing medium level work full time.  (Tr. 805-06, 810).

The ALJ was not incorrect in placing great weight on the opinion of Dr. Witkind;

Dr. Witkind had the advantage of viewing all of the medical evidence of record and is a

neurosurgeon with years of experience.  The ALJ provided explicit and adequate

reasoning for rejecting the other physicians' opinions of record.  Additionally, although

Plaintiff argues the previous ALJ did not find Plaintiff capable of medium work, the ALJ

was not required to adopt any part of the opinion of the previous ALJ, as he reviewed

the entire record of evidence and conducted his own sufficient analysis.

Although Plaintiff asks the Court to remand this case to develop the evidence

further based on Dr. Witkind's statement that it is unfortunate there was no neurological

examination in this case, Dr. Witkind was clear in his assessment of Plaintiff's

limitations; he never opined he could not make an assessment based on the evidence

he had before him and indeed, Dr. Witkind clearly opined Plaintiff was capable of a full

range of full-time medium level work.  (Tr. 808).  Thus, the ALJ did not err in rejecting

the other physicians' findings; nor did he err in relying on the opinion of Dr. Witkind.

### iii.   Whether the ALJ Erred in Not Developing the Record Further by Ordering a Neurological Evaluation

Plaintiff also argues that the ALJ erred in failing to further develop the record by

not ordering a neurological examination of Plaintiff, as he has "a duty to develop a full

and fair record."  (Doc. 19, p. 19).  Plaintiff bases this argument on the fact that Dr.

23

Witkind indicated several times that it was "unfortunate" that the record did not contain a neurological examination from a neurologist and questioned whether Dr. Pulwers was qualified to make any neurological findings.  Id.  Plaintiff concludes Dr. Witkind had an obvious bias for neurological assessments and Dr. Witkind's opinion was not reliable- as evidenced by his opinion that Plaintiff could "probably" work at a medium work level.  Id.

The Commissioner agrees that the ALJ "has a basic obligation to develop a full and fair record." (Doc. 20, p. 10) (citing Ellison v. Barnhart, 335 F.3d 1272, 1276 (11th Cir. 2003).  On the other hand, the Commissioner asserts an ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision.  Id. at 20. (citing Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) and  Kelley v. Heckler, 761 F.2d 1538, 1540-41 (11th Cir. 1985)).  The Commissioner argues that Plaintiff failed to show a consultative neurological examination was necessary for the ALJ to make an informed decision, and the medical evidence, including Dr. Witkind's testimony, provided substantial evidence to support the ALJ's findings.  Id.

While both parties are correct in their statements of the law, the Commissioner is correct in that Plaintiff has not demonstrated that a consultative examination was necessary to make an informed decision.  Indeed, Dr. Witkind's detailed findings are sufficient for the ALJ to make an informed decision.  Moreover, although Dr. Witkind noted the lack of any neurological examination, calling it "unfortunate" and did use the word "probably" when opining Plaintiff could work at a medium level, Dr. Witkind did not waiver in his opinion of Plaintiff's ability to work, but rather was definitive in his

24

assessment of Plaintiff's overall condition and limitations, or lack thereof.  Moreover, Dr.

Witkind recommended on more than one occasion that Plaintiff could work a full range

of full time work, at a medium level, with a 50 pound max.  The ALJ did not err in

accepting the opinion of Dr. Witkind and in relying on his testimony when finding Plaintiff

capable of medium level work.

Accordingly, the ALJ's findings are supported by substantial evidence and

therefore, the Court finds that a remand is unnecessary in this case.

## IV.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**.

The Clerk of the Court is directed to enter judgment consistent with this opinion and,

thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this   8th   day of August, 2008.


*Monte C. Richardson*
_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record